UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| HASLER AVIATION, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:06-CV-180 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| AIRCENTER, INC., GARY GADBERRY, ) | |
| GANN AVIATION, INC., TWIN ) | |
| COMMANDER AIRCRAFT LLC, and ) | |
| ARNOLD BLANKENSHIP ) | |
| d/b/a FIRETRUCK AVIATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

The matter before the Court arises from the sale of an aircraft, which plaintiff Hasler Aviation L.L.C. ("Plaintiff") alleges was defective and not airworthy, notwithstanding representations to the contrary by the various defendants (Doc. No. 15). The Court has jurisdiction because the amount in controversy exceeds $75,000 and the parties are diverse. 28 U.S.C. § 1332(a). The Court applies the law of the forum state in a diversity action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). On December 14, 2006, defendant Twin Commander Aircraft LLC ("Twin Commander") filed a motion for judgment on the pleadings with supporting memorandum (Doc. Nos. 22 & 23).[1] Twin Commander argues the economic loss doctrine precludes Plaintiff's products liability claim (*id.*). In a timely filed response, Plaintiff asserts that its claims sound in negligence and not in products liability (Doc. No. 28). Twin Commander timely replied (Doc. No.

---

[1] On February 20, 2007, all parties except Twin Commander notified the Court that they were attempting to mediate the claims (Doc. No. 38). However, it appears the mediation has failed. The motion to dismiss filed by defendant Gary Gadberry will be addressed by separate order.

30). For the reasons set forth below, Twin Commander's motion is **GRANTED**.

**I.     FACTS**

Plaintiff purchased a 1962 Aero Commander Model 500A ("aircraft") from Aircenter, Inc. ("Aircenter") (Doc. No. 15, ¶¶ 12–15). The purchase price included an upgrade package quoted by Aircenter and its proprietor, Gary Gadberry ("Gadberry") (*id.* ¶¶ 18–20). Aircenter guaranteed the aircraft would have a new annual inspection and comply with Federal Aviation Administration ("FAA") Airworthiness Directives (*id.* ¶ 21). After accepting delivery in December 2004, Plaintiff noticed, and Gadberry admitted, the aircraft was defective and was not airworthy (*id.* ¶¶ 29–31; Doc. Nos. 15-6 & 15-7). The long list of defects and non-conformities includes "wing spar corrosion" (*id.* ¶¶ 30, 44–46). Plaintiff suffered no personal injury or damage to other property but was left with an aircraft which cost over $250,000 and yet is unsafe to fly (*id.* ¶¶ 47–48). Plaintiff sued Aircenter, Gadberry, Gann Aviation, Inc., and Arnold Blankenship for breach of contract, breach of warranty, fraud and/or negligent misrepresentation, and violations of the Tennessee Consumer Protection Act.

Twin Commander is the "type certificate holder" for Model 500A ("Model 500A") Aero Commanders (Doc. No. 21, ¶ 33). Plaintiff asserts that federal regulations require type certificate holders to report defects discovered in their aircraft if those defects could cause structural failure, among other failures (Doc. No. 15, ¶ 32) (citing 14 C.F.R. §§ 21.3(a) & (c)(8)). Plaintiff claims Twin Commander knew its Model 500A aircraft had issues with wing spar corrosion (*id.* ¶ 35) and Twin Commander was negligent *per se* in failing to notify the FAA or issue a "Service Bulletin"

regarding the corrosion problems (*id*. ¶¶ 74–75).[2]

## II.  STANDARD OF REVIEW

A motion for judgment on the pleadings filed pursuant to Fed. R. Civ. P. 12(c) is evaluated under the same standard as a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). In reviewing a motion under either Rule, the Court construes the complaint in favor of the plaintiff and accepts the complaint's factual allegations as true. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994). The Court must decide whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (rejecting traditional Fed. R. Civ. P. 12(b)(6) analysis in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). The Court's concern is not whether the plaintiff will ultimately prevail, but whether the plaintiff "is entitled to offer evidence to support his claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). At the same time, unsupported conclusions of law are insufficient and the complaint must contain direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

## III.  DISCUSSION

---

[2] Plaintiff alleges Twin Commander "knowingly" withheld information from the FAA related to the performance or operation of Model 500A and similar aircraft, and alleges this information was causally related to Plaintiff's damages (Doc. No. 15, ¶ 75). Plaintiff demands punitive damages from Twin Commander because of this intentional conduct (*id*. ¶ 76).

Twin Commander cites the complaint and argues Plaintiff has suffered no personal injury or damage to other property. Twin Commander argues the Tennessee Products Liability Act ("TPLA"), Tenn. Code Ann. §§ 29-28-101 *et seq*., governs Plaintiff's Amended Complaint (Doc. No. 15), since the complaint alleges negligence and failure to warn against a product's manufacturer (Doc. No. 23, p. 6-7). If Plaintiff is asserting a products liability claim under a negligence or strict liability theory, and if Plaintiff is only seeking damages for the loss in value of the aircraft, Twin Commander claims the economic loss doctrine bars any recovery by Plaintiff (Doc. No. 23, p. 2–3).

Plaintiff counters that the Amended Complaint does not sound in products liability. Rather, Plaintiff alleges damages caused by Twin Commander's failure to fulfill a duty, imposed by federal law, to update the FAA and to issue a Service Bulletin about known technical defects in the Model 500A (Doc. No. 15, ¶¶ 32–36; Doc. No. 28, p. 1). Plaintiff alleges a negligence per se breach under 14 C.F.R. § 21.3(a) (Doc. No. 15, ¶ 75). In the Amended Complaint, Plaintiff does not allege fraud, negligent misrepresentation, or innocent misrepresentation against this defendant (*id*. ¶¶ 61–67).

These arguments raise two questions for this Court: (1) does Plaintiff assert a cause of action in products liability or in negligence, and (2) if Plaintiff asserts a negligence cause of action, does the economic loss doctrine bar Plaintiff's recovery?

    **A.**    **THE COMPLAINT ASSERTS A CLAIM AGAINST TWIN COMMANDER AS THE AIRCRAFT'S MANUFACTURER.**

The Court recognizes its duty is to construe the Amended Complaint in Plaintiff's favor, but even read in this light, the Court finds this to be a case against a manufacturer. Though Plaintiff does not specifically refer to Twin Commander as the manufacturer, designer, or distributor of the aircraft and instead uses the term "type certificate holder," it appears, under FAA regulations, that the type certificate holder must be the original or a successor manufacturer of an aircraft.

### 1.　FAA Regulations Impose A Three-Step Certification On Aircraft.

In the Federal Aviation Act of 1958, 49 U.S.C. § 1421(a)(1), Congress established a multi-step certification process for aircraft. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 804 (1984). The FAA developed a comprehensive set of regulations which establish minimum safety standards the designers and manufacturers of aircraft must meet. *Id*. The FAA reviews plans, engineering data, and other documentation submitted by manufacturers. After a manufacturer demonstrates its aircraft meet applicable safety standards, the FAA issues a type certificate, which permits a manufacturer to continue into production and marketing. *Id*. at 805.

> The first stage of the FAA compliance review is type certification. A manufacturer wishing to introduce a new type of aircraft must first obtain FAA approval of the plane's basic design in the form of a type certificate . . . . In the course of the type certification process, the manufacturer produces a prototype of the new aircraft and conducts both ground and flight tests . . . . Production may not begin, however, until a production certificate authorizing the manufacture of duplicates of the prototype is issued. To obtain a production certificate the manufacturer must prove to the FAA that it has established and can maintain a quality control system to assure that each aircraft will meet the design provisions of the type certificate . . . . Before any aircraft may be placed into service, its owner must obtain from the FAA an airworthiness certificate, which denotes that the particular aircraft in question conforms to the type certificate and is in condition for safe operation. An additional certificate is required when an aircraft is altered by the introduction of a major change in its type design. To obtain this supplemental type certificate, the applicant must show the FAA that the altered aircraft meets all applicable airworthiness requirements.

*Id*. at 805–06. In *Varig Airlines*, the Supreme Court distinguished between type certificates, which must be obtained by the manufacturer and supplemental type certificates, which may be obtained by "any person." *Compare id*. at 800 ("[b]efore introducing a new type of aircraft, a manufacturer must first obtain from the FAA a type certificate signifying that the basic design of the aircraft meets minimum criteria specified in the safety regulations") (citing 14 C.F.R. §§ 21.11–.53) *with id*. at 803 n.4 (citing 14 C.F.R. § 21.113) ("[a]ny person who alters an aircraft by introducing a major change

5

in the type design must obtain from the FAA a supplemental type certificate"). *See also Gatx/Airlog Co. v. United States*, 286 F.3d 1168, 1171 (9th Cir. 2002) ("The first stage of this process is type certification, in which airplane manufacturers seek approval of new aircraft designs. Under federal regulations, aircraft manufacturers must analyze and test their new aircraft designs. Based on the resulting engineering and test data, the FAA then determines the airworthiness of those designs. If the manufacturer demonstrates that the design complies with federal regulations, the FAA issues a type certificate. In most instances, the certificate covers an aircraft model, rather than an individual airplane.") (citations omitted).

FAA regulations impose upon "the holder of a Type Certificate" a duty to "report any failure, malfunction, or defect in any product, part, process, or article manufactured by it that it determines has resulted in . . . significant aircraft primary structural defect or failure caused by any autogenous condition (fatigue, understrength, corrosion, etc.)." 14 C.F.R. §§ 21.3(a) & (c)(8); *see also Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 660 (E.D. Pa. 2004) (14 C.F.R. § 21.3 requires type certificate holder to report failures, investigate failures, and report design defects to the FAA).

### 2. A Type Certificate Holder Must Be A Manufacturer.

Plaintiff claims Twin Commander had a duty to inform Plaintiff if the Model 500A was not airworthy. This duty was not based on Twin Commander's role as manufacturer but on its status as the Model 500A's type certificate holder (Doc. No. 28, p. 7). This Court has extensively researched the question of whether/when a type certificate holder and a manufacturer are synonymous. It seems this question has not been answered in this formulation. Most courts assume type certificate holders and manufacturers are the same.

Several courts have considered a related question (when a successor corporation is defined

as an aircraft's manufacturer) under the General Aviation Revitalization Act, Pub. L. No. 103–298, 108 Stat. 1552 (1994). "GARA" shields manufacturers from liability for aircraft or parts in use for more than eighteen years. In a well-reasoned opinion, the Pennsylvania Supreme Court held: a type certificate "is an essential prerequisite to manufacture in the aviation industry," *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 425 (Pa. 2006), and type certificate holders are included in the term "manufacturer" as used by GARA, *id.* at 427; *see also* 916 A.2d 619, 622 (Pa. 2007) (reargument). The court concluded, practically, that only the manufacturer or designer of an aircraft can become its type certificate holder because of the amount of data and test results that must be submitted as part of the extensive "process" to obtain FAA type certification. *Id.* at 425 ("[s]ince assumption of the duties and responsibilities arising out of the process are essential to manufacturing, claims arising from alleged breaches of such duties and responsibilities logically must be considered to be asserted against the manufacturer 'in its capacity as manufacturer'").[3]

In *Burroughs v. Precision Airmotive Corp.*, 93 Cal. Rptr. 2d 124 (Cal. Ct. App. 2000), the defendant was an aircraft parts manufacturer, but did not manufacture the defective carburetor at issue; rather, it later acquired the product line and type certificate. *Id.* at 126. The court found the defendant was the "manufacturer" under GARA because it was a successor to the type certificate. *Id.* at 133. The court rejected the plaintiff's failure-to-warn claim, which the plaintiff asserted was independent of the defendant's status as a manufacturer. The court found the duty to warn "pursuant to the duties and obligations imposed by federal law on manufacturers of general aviation aircraft."

---

[3] This Court recognizes the *Pridgen* court and other courts cited here were construing the term "manufacturer" as used in a specific statute and not in its common usage. However, this case is instructive as to how type certificate holders are perceived and what their duties might be under federal aviation law.

7

*Id*. at 126. The court found "the aircraft industry is unique because of the extensive 'cradle to grave' federal regulatory oversight of the industry," and this uniqueness meant "regular" tort principles did not apply. *Id*. at 133 (citing H.R. No. 103-525(II), 103d Cong., 2d Sess., (1994), p. 1647).

In *Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543 (Iowa 2002), the Iowa Supreme Court considered a claim arising from a helicopter crash. As in *Burroughs*, the defendant did not manufacture the accident aircraft but succeeded to the product line and type certificate. *Id*. at 545. As here, the plaintiff sued on a theory that was not based in products liability theory or on the role of the defendant as a manufacturer but was based on "independent liability for negligent performance of an undertaking." *Id*. at 546-47. The plaintiff alleged the defendant provided maintenance information which omitted material safety documentation. *Id*. The court rejected these arguments, finding the defendant equated to the manufacturer because it held the type certificate. *Id*. at 550-52. Further, the plaintiff's negligent performance claims (defendant's duty to warn of safety issues in this case) arose from the defendant's capacity as manufacturer. *Id*. at 552.

A federal court in the Southern District of South Dakota has held that a type certificate holder is not always considered a manufacturer under GARA. *Sheesley v. The Cessna Aircraft Co.*, 2006 WL 1084103, *6 (S.D. S.D. Apr. 20, 2006). However, the court's ruling was restricted to its facts. There was no evidence the defendant aircraft company was the actual manufacturer of the allegedly defective part; in fact, the plaintiff claimed the part was covered by type certificates held by two separate manufacturers. *Id*. The court relied on *Burroughs* and *Mason* to hold that GARA's intent – revitalizing the American general aviation industry by terminating the "long tail" of liability for aircraft manufacturers – was consistent with limiting the defendant's liability by not considering the defendant/type certificate holder the manufacturer. *Id*.

A manufacturer does not automatically become the type certificate holder for an aircraft or aircraft part – the FAA grants type certificates upon application. 14 C.F.R. § 21.15. FAA regulations state that "any interested person may apply for a type certificate." *Id*. § 21.13. The regulations do not define "interest," so there is an argument (but a poor one), someone besides a manufacturer could apply. However, this Court does not think a non-manufacturer could obtain a type certificate. A type certificate application must include drawings, data, and information on the model's ability to meet applicable FAA regulations and safety requirements. *See* 14 C.F.R. §§ 21.15 & 17. Moreover, every case this Court has read – including Supreme Court precedent – *assumes* the manufacturer is the "interested person" who obtains the type certificate. *E.g.*, *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 270 (Cal. 2004) ("All aircraft manufacturers in the United States . . . must obtain a type certificate from the [FAA]. The type certificate freezes the design as of the date the certificate is issued."); *Crane Helicopter Servs. v. United States*, 45 Fed. Cl. 410, 415 (Fed. Cl. 1999) ("The FAA has a system where a company can present an aircraft to the FAA with all the details about that aircraft, and that company can be awarded the rights to produce that aircraft. The aircraft . . . design is evaluated by the FAA. All the drawings, the blueprints, the heart of the helicopter, are produced for the FAA . . . [and] the FAA issues a type certificate. That gives the manufacturer the authorization to build the helicopter on his own.").

Therefore, this Court agrees with the reasoning of the above cases: the FAA grants a type certificate to the manufacturer, and any action against a type certificate holder is really against the manufacturer. The existence of supplemental type certificates, which may be obtained by those who

are not the original manufacturers/type certificate holders in order to build upon a prior design,[4] and the fact a type certificate may be licensed to another producer, 14 C.F.R. §§ 21.47 & .55, support this and other courts' interpretation of the FAA regulations.

### 3. The Plain Language Of The Regulations States There Is No Duty To Report/Warn Unless The Type Certificate Holder Is The Manufacturer.

According to Twin Commander, if Plaintiff refuses to admit it is the aircraft's manufacturer, it is a "legal impossibility" for Twin Commander to be liable for failure to warn (Doc. No. 30, p. 5). This Court agrees.[5] FAA regulations impose a duty to report defects in "any product, part, process, or article manufactured" by the type certificate holder. 14 C.F.R. § 21.3(a). If Plaintiff does not allege that Twin Commander manufactured the aircraft (Doc. No. 28, p. 7) (stating Plaintiff is unsure whether Twin Commander manufactured the aircraft), then, Twin Commander had no duty to report known defects under the regulation. If Twin Commander had no duty, Plaintiff cannot establish negligence.[6] In *Whaley v. Perkins*, 197 S.W.3d 665 (Tenn. 2006), the Tennessee Supreme Court defined negligence per se as follows:

> The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence

---

[4] In *Gatx/Airlog Co. v. United States*, 286 F.3d 1169 (9th Cir. 2001), an engineering firm obtained a supplemental type certificate ("STC") on behalf of a manufacturer, then assigned the STC to the manufacturer. *Id.* at 1172. There are no facts presented here, and this Court could find no case law, in which a similar situation occurred with a type certificate. *See also Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 685 (Tex. Ct. App. 2001) (defendant obtained STC to convert aircraft made by another company into a more powerful model; company leaders disliked each other, so there was no participation from the manufacturer/type certificate holder in the conversion).

[5] Plaintiff also seems to agree, having failed to address this argument in the response (Doc. No. 28) to Twin Commander's motion for judgment on the pleadings.

[6] The elements of a negligence action are: (1) a duty of care owed by the defendant to the plaintiff; (2) defendant's breach of that duty; (3) plaintiff's injury; (4) causation in fact; and (5) proximate, or legal, cause. *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006).

> per se. "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate." In order to establish negligence per se, it must be shown that [1] the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. It must also be established that [2] the injured party was within the class of persons that the statute was meant to protect.

*Id.* at 672 (citations omitted). Again, here the standard of care under 14 C.F.R. § 21.3(a) is imposed as a duty on the type certificate holder in relation to a product "manufactured by it." If Plaintiff does not establish these elements, Plaintiff cannot support a negligence per se claim. *Whaley*, 197 S.W.3d at 673 (negligence per se doctrine "is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute. Not every statutory violation amounts to negligence per se.")).

Plaintiff next tries to couch its claim as "negligent performance of services," arguing "Twin Commander . . . is more akin to a provider of serviced than to a manufacturer or distributor subject to product liability" (Doc. No. 28, p. 11). This fails because Plaintiff cannot show Twin Commander provided any services to Plaintiff – it did not sell the aircraft to Plaintiff and thus had no contract or relationship with Plaintiff, and it did not perform any mechanical maintenance on the aircraft. Twin Commander's only alleged duty arises from its role as manufacturer. *Accord Burroughs*, 93 Cal. Rptr. 2d at 136 ("Defendant's duties and obligations concerning this product, including a continuing duty to warn, were imposed on it by federal law. Imposing a separate and independent duty based on general principles of tort law would not only be superfluous in light of the federal statutory scheme regulating and overseeing the duties of manufacturers in the general aviation industry, but would also directly conflict with that statutory scheme."); *Robinson v. Hartzell Propeller, Inc.*, 326 F. Supp. 2d 631, 661 (E.D. Pa. 2004) (collecting cases the court thought rejected a "theory of liability recasting a claim based on the negligent design of an aircraft component as a

11

negligence claim based on a maintenance manual's failure to warn" and stating the rationale for these cases was to avoid opening a "back door to sue for the design flaw"); *Schamel v. Textron-Lycoming*, 1 F.3d 655, 655-57 (7th Cir. 1993) (plaintiff alleged aircraft engine manufacturer failed to provide adequate service info in manuals; appellate court held "an action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action").

Finally, Plaintiff attempts to restate the allegations as a negligent misrepresentation claim. Plaintiff specifically alleged a negligent misrepresentation count in the Amended Complaint, yet failed to include Twin Commander in such count (Doc. No. 15, Count 4). The Court finds no basis for asserting this now. Furthermore, at least one federal court has found FAA regulations (1) do not allow a buyer to reasonable rely on information provided by manufacturers to the FAA, for purposes of a negligent misrepresentation claim, and (2) do not guarantee against diminution of an aircraft's value for secondary and tertiary buyers. *See Rocky Mountain Helicopters v. Bell Helicopters Textron*, 24 F.3d 125, 132-33 (10th Cir. 1994) (construing Texas law, which, like Tennessee law, is based on § 552 of the Restatement (2d) of Torts):

> The elements of negligent misrepresentation . . . are as follows: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) defendant supplies false information for the guidance of others in their business; (3) defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) plaintiff suffers pecuniary loss by justifiably relying on the representation . . . . It cannot be said that Bell supplied the information to the FAA intending that a remote buyer base its purchase of a used helicopter upon it. As stated above, Bell's purpose in providing the information to the FAA was to obtain a type certificate.
>
> The purpose of FAA type certification is to ensure safety . . . [which] means taking precautions that the helicopter will not break down in flight; it does not mean that it will not break down at all . . . . Thus, the purpose of the FAA certification procedure

> is not to protect future buyers from any helicopter breakdown . . . but is instead only to ensure the safety of those who would be placed in danger. Consequently, the FAA has effectively eliminated the owner from the limited class of persons the type certificate information is designed to protect, unless of course the owner is a passenger on the helicopter or one who could otherwise be injured in a helicopter accident. Because the owner is suing in its status as purchaser rather than as a potential accident victim (which it is unlikely a corporation could be), we hold that Rocky Mountain cannot sue Bell for negligent misrepresentation.

*Id.* at 132-33.

In short, Plaintiff states it *does not* assert a products liability cause of action against Twin Commander. However, Plaintiff *cannot* assert a negligence or negligence per se cause of action against Twin Commander, because Twin Commander owes Plaintiff no duty *except in its capacity as a manufacturer of a defective product*. This Court will consider Twin Commander's argument that the economic loss doctrine precludes Plaintiff's recovery for the loss in value of the aircraft, i.e. a strictly pecuniary loss.

### B.   THE ECONOMIC LOSS DOCTRINE BARS RECOVERY FOR PECUNIARY LOSS.

In the products liability context, the economic loss doctrine bars the purchasers of defective products from recovering economic/pecuniary damages from the manufacturer or distributor of the product. *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995) (Tennessee law does not recognize a products liability claim for purely economic loss under either a strict liability or a negligence theory; stating "a manufacturer does not owe a duty to avoid causing purely economic damage"); *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 173 (Tenn. Ct. App. 2001) ("tort liability for the sale of goods [arises] only when there is either personal injury or damage to other property"). A purely "economic loss" means a defective product causes neither personal injury nor

13

damage to other property but damages only "product itself." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986); *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 465 (Tenn. Ct. App. 2003) (defining an "action brought to recover damages for inadequate value, cost of repair, and replacement of defective goods or consequential loss of profits" as an action for purely economic loss) (quotations omitted). In *Olin Corp. v. Lambda Electronics, Inc.*, 39 F. Supp. 2d 912 (E.D. Tenn. 1998), this Court granted a motion to dismiss where there was no allegation of personal injury and/or property damage and the plaintiff sought only "economic loss damages." *Id*. at 915.[7]

Tennessee law goes further. A plaintiff in Tennessee cannot recover for purely economic/ pecuniary damages under a theory of negligence or strict liability if there is no privity between the plaintiff and defendant. *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 931 (Tenn. 1991) (construing Tenn. Code Ann. § 29-34-104) ("In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty . . . privity shall not be a requirement to maintain such action.").

Plaintiff's complaint seeks compensation for the aircraft's loss of value because the aircraft is not airworthy. Plaintiff cannot assert a products liability cause of action against Twin Commander as the aircraft's manufacturer because such claim is precluded by the economic loss doctrine.

Plaintiff asserts it has not sued Twin Commander as the manufacturer of a defective product; this Court has found the defendant owes Plaintiff no duty except in its capacity as a manufacturer. Since Twin Commander owes Plaintiff no duty, Plaintiff cannot assert a negligence claim. In any

---

[7] In fact, Plaintiff concedes this point. *See* Doc. No. 28, p. 12: "Twin Commander would be entitled to judgment on the pleadings on the basis of the economic loss doctrine [if Plaintiff had pleaded a products liability claim]."

14

event, Plaintiff cannot assert a negligence claim against Twin Commander because there is no privity between the parties (Doc. No. 28, p. 12) ("nor is the relationship between these two parties governed by a contract").  Thus, Plaintiff cannot state a claim against Twin Commander *under any theory* for purely economic loss.  Plaintiff's Amended Complaint against Twin Commander must be dismissed.

IV. **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Twin Commander's motion for judgment on the pleadings (Doc. No. 22).

An order will enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**